# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JUDITH A. FRANKS, | |
| Plaintiff, | No. C08-4023-MWB |
| vs. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

_____

## I. INTRODUCTION

The plaintiff Judith A. Franks seeks judicial review of a decision by an administrative law judge ("ALJ") denying her application for Title II disability insurance ("DI") benefits. Franks claims the ALJ erred in finding her subjective complaints not fully credible, and in finding she has the residual functional capacity to perform her past relevant work. (*See* Doc. Nos. 9, 10 & 12)

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

On June 16, 2004, Franks filed an application for DI benefits, alleging a disability onset date of April 1, 2001. (R. 56-58). Franks claims she is disabled due to vascular lesions and high blood pressure. She claims these conditions limit her ability to work as follows: "Affects my memory; my right side (especially right arm) has little feeling when I have the headaches. I am getting more headaches all the time. I had been advised by Dr. Purves to avoid stress and not to lift over 20 pounds." (R. 66) She last worked as a clerk at the Sioux City Library, from August 1998 to April 2001. She quit her job because she "could not take the stress and [her] memory was bad." (*Id.*)

Franks's application was denied initially and on reconsideration. (*See* R. 26-31, 34-36) Franks requested a hearing, and a hearing was held on April 4, 2007, before Administrative Law Judge ("ALJ") Jan E. Dutton. (R. 162-212) Franks was represented at the hearing by attorney Robert Deck. Franks and her husband both testified at the hearing, and Vocational Expert ("VE") Gail Leonhardt also testified. On July 26, 2007, the ALJ issued an unfavorable decision, finding that Franks has no severe impairments, she retains the residual functional capacity to return to her past relevant work, and she therefore is not disabled. (R11-23) Franks appealed the decision, and on January 19, 2008, the Appeals Council denied her request for review (R. 6-8), making the ALJ's decision the final decision of the Commissioner.

Franks filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 4) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. Franks filed a brief supporting her claim on June 26, 2008. (Doc. No. 9) She filed a correction to her brief on June 30, 2008. (Doc. No. 10) The Commissioner filed a responsive brief on August 4, 2008. (Doc. No. 11) Franks filed a reply brief on August 14, 2008. (Doc. No. 12). The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Franks's claim for benefits.

### B. Factual Background

1. *Introductory facts and hearing testimony*

   a. *Franks's hearing testimony*

At the time of the ALJ hearing, Franks was sixty-one years old. She is a high school graduate and finished a one-year course in business school. She assesses

herintelligence level as average. She is married, and her husband is retired. They live in Sioux City, Iowa, and have three children and five grandchildren. (R. 169-70)

Franks babysits her grandchildren, ages twenty months old, seven years old, and fifteen years old at the time of the hearing. She indicated the older girls are "self-sufficient," and it is only the baby who requires any effort. (R. 171) She usually babysits her grandchildren three days a week, for anywhere from four hours to eight or nine hours a day. (R. 172) She watches the children at her daughter's home because the crib and other items for the baby's care are there. (R. 185)

Franks has worked in sales, telemarketing, and as a library assistant. All of her jobs have been part-time. Her longest job was telemarketing, which she did for five years. (R. 172-73) In 1993, when Franks was working as a telephone solicitor, she developed numbness on her right side. According to Franks, doctors initially thought she had suffered a stroke. They sent her to a specialist who ran some tests and determined she had a vascular lesion. She applied for disability but her application was denied. She saw a psychologist "because it was so upsetting," and she left her telemarketing job. She could have continued at that job, but she "just wasn't up to it." (R. 174-75) A couple of years later, she began working with her husband at a jewelry store. This job produced the highest income of any of her jobs. She would set up display cases and wait on customers. She lost that job when the store went out of business. (R. 173, 175)

She next worked at the Kirby Company for just a short time, setting up appointments for carpet cleaning. Her next job was at the library, where she would check in, shelve, and alphabetize books, help library patrons, and do some computer work. She also did some work at the reference desk, "looking up in the computer for books for people." (*Id.*) She left the library job in 2001, because she developed memory problems and was "misplacing books." (R. 176) According to Franks, the library was trying to think of a way to fire her, so she decided to quit before she was fired. (*Id.*)

Franks decided to apply for disability again because she feels she cannot return to the workplace due to her headaches and memory problems. She stated that during her job at the library, she sometimes would stand at the computer and not be able to remember what she was supposed to do. (*Id.*)

According to Franks, her vascular lesion is inoperable. She does not see a doctor regularly because she has been told there is no treatment available for the lesion. She takes blood pressure medication, but otherwise, there is nothing doctors can do for her. Franks stated doctors told her she was born with the condition. She indicated her condition gets worse as she gets older, with more frequent headaches and more memory difficulties. She sometimes takes Tylenol for the headaches, but she has taken as many as eight Tylenol with no relief from the headache pain. (R. 177-78) According to Franks, doctors have told her she cannot take anything stronger than Tylenol for the pain. (R. 186) She basically was told the condition is untreatable, it will not improve, and she just has to live with it. (R. 178)

Franks's headaches occur an average of three to four times a week, and she always has constant pain in the back of her head. A headache can last as long as a full day. The pain varies from about a six or seven to a ten, on a ten-point scale. Once or twice a month, she gets an extremely bad headache that can last twenty-four hours. She experiences stabbing pain in the left side of her head, and she sees "wavy lines" that prevent her from reading anything. She will experience numbness on the entire right side of her body, and she must hold onto the wall to walk to the bathroom. When she attempts to turn on a faucet or touch something with her right hand, she is unable to feel where the object is. She also experiences sensitivity to light. She does not use a computer anymore because it will give her a headache. (R. 179-80, 182-83, 192)

During her severe headaches, she is unable to do anything at all; she lays in bed with a cold washcloth on her head. (R. 179-80) On those days, she is unable to babysit

4

her grandchildren, and her husband or one of the children's parents will care for them. (R. 180, 185) For a day or two after one of the severe headaches, she is very weak, has no energy, and is somewhat "dizzy and numb." (R. 181)

Franks stated she only worked part-time at all of her jobs. If she got a severe headache while she was working, she would have to go home. (R. 184) Stress makes her headaches more frequent and more severe. (R. 185)

### b. *James Franks's hearing testimony*

Frank's husband James is three years older than Franks. He has a high school education and works part-time in the delicatessen at a grocery store. (R. 195)

James recalled the time when Franks's condition was first diagnosed, and stated he has done some research on her condition. It is James's understanding that there is no medical procedure available to correct Frank's vascular lesion. Although some similar lesions can be treated with a gamma laser procedure, the procedure would kill Franks because of the size and mass of her lesion. (R. 196-97) He stated a doctor showed him and Franks a brain scan of the lesion, and the doctor characterized the lesion as "massive." (R. 197)

According to James, doctors told them there is no available treatment and Franks simply has to live with her condition. She can try to control her headaches by avoiding stressful situations, and situations that cause her blood pressure to rise. (*Id.*) Franks tried to work for awhile at the jewelry store, where James was her immediate supervisor. He tried to shield Franks from "any type of pressure or stress," but at times, he would have to send her home because she was unable to handle the stress. (R. 198)

When their financial situation required Franks to return to work, she started working at the library, but she did not tolerate the pressure and stress well. She reported to James that she was forgetful at work and feared she was going to be fired. When she

5

told James that she could not tolerate the pressure and stress anymore, James told her to quit her job, which she did. (R. 199)

According to James, Franks suffers severe headaches several times a month. When she has a headache, she basically is unable to function. He often has to help her get to bed, and then Franks cannot get up unassisted. The severe headaches last from twenty-four to forty-eight hours. After a severe headache, it takes Franks several days to return to full functioning. James stated Franks does not take medication for her headaches because, according to him, doctors told Franks the only safe medication she can take is Tylenol, and it does not help. He stated that since doctors told Franks thirteen years ago that her headaches and lesions were untreatable, she has not sought further medical treatment for her headaches or her lesions. (R. 199-202) They might have sought further medical opinions, but they are uninsured and have not had funds to explore other treatment options. (R. 205) In addition, the doctor Franks had seen previously told them a short time before the ALJ hearing that he did not "get involved in Social Security disability." (R. 206)

James stated that if Franks develops a headache while she is babysitting their grandchildren, he goes over to their daughter's house and cares for the baby until James goes to work at 4:00 p.m., so Franks can lie down. He has done this on numerous occasions. (R. 202)

James stated Franks also has osteoporosis that was diagnosed in about 2005. She takes medication but has seen no improvement. She keeps a hot pad on her hip and complains of hip pain "all the time." (R. 206)

### 2. *Franks's medical history*

In May 1993, Franks saw neurologist G.B. Purves, M.D. for complaints of frequent, severe headaches, often preceded by blurred vision and some numbness and

6

tingling on her right side. A CT scan revealed "a huge enhancing lesion" in Franks's brain. (R. 120) Angiograms identified the lesion as "a huge arteriovenous malformation ("AVM") which has feeding vessels from posterior cerebral, middle cerebral and both anterior cerebral vessels." (R. 118) Dr. Purves opined that surgical removal of the lesion could produce "a major neurological deficit." (*Id.*) He recommended radiation therapy as Franks's best treatment option, and he requested a second opinion from Quentin J. Durward, M.D. (*See* R.-118-21)

Dr. Durward reviewed Franks's angiogram and identified, in addition to the AVM, a possible 4-5mm aneurysm arising off the proximal posterior cerebral artery on the left. He stated that before Franks underwent treatment for the AVM, they needed to confirm the presence or absence of an aneurysm. If an aneurysm was present, he recommended that it be clipped. Regarding the AVM, Dr. Durward discussed several treatment alternatives, and he opined that at Franks's age (48 at the time), it was reasonable to consider some type of treatment. He referred Franks back to Dr. Purves for further studies to determine whether Franks had an aneurysm. (R. 117)

Dr. Purves sought the opinion of Christopher Shields, M.D., at the University of Louisville, regarding possible treatment for Franks's AVM. Dr. Purves was reluctant to consider surgical intervention for Franks's "horrendous lesion" because the lesion is located in Franks's dominant hemisphere and she is right-handed. He requested Dr. Shields's opinion regarding possible treatment with a gamma knife. (R. 115)

Dr. Shields's response does not appear in the record, but a month later, Dr. Purves saw Franks again, and he again noted his reluctance "to consider surgical intervention anywhere in the world on this lesion as . . . the likelihood of [Franks] having a significant deficit postoperatively is very high." (R. 115) In addition, he noted the lesion was too large for radiation therapy, and he concluded that no other treatment was available. Dr. Purves indicated Franks could try returning to her four-hour-per-day, four-day-per-

week job, to see if she could deal with the stress of working. The doctor noted Franks should, in the future, "have meticulous care to her blood pressure to ensure that this is not running high." (*Id.*) He indicated that otherwise, there was nothing they could do to reduce Franks's risk. (*Id.*)

Dr. Purves saw Franks for follow-up in January 1995. Her condition was unchanged, and he continued to have no other treatment recommendations. (R. 114)

Franks was seen in the emergency room in April 2000, with complaints of feeling shaky, light-headed, and dizzy. She was diagnosed with sinusitis and was treated with medication. (R. 130; *see* R. 128-33)

From December 26, 2001, through June 18, 2004, Franks was followed for her blood pressure and general medical needs at Morningside Medical Clinic. She was seen at least a dozen times during this time period, most often for sinus problems, but notes do not indicate she ever mentioned to her treating doctors or nurse-practitioners that she was having debilitating headaches. (*See* R. 134-44)

On December 29, 2004, Douglas W. Martin, M.D. performed a comprehensive examination of Franks at the request of Disability Determination Services. (R. 145-50) Dr. Martin opined that when Franks is not having one of her venous headaches, she would have no limitations of her activities of daily living and she could work. However, based on Franks's description of her "attacks," he opined she would be precluded from all activities of daily living for a period of 48 to 72 hours during and after the vascular headaches. He further noted, "It is true that large arteriovenous malformation problems are not amenable to any type of temporizing or ameliorative care. Therefore, this is going to be a long-term situation for this lady." (R. 147)

On January 31, 2005, Claude H. Koons, M.D. reviewed the record at the request of the state agency. He found Franks to have "a serious impairment" from a functional standpoint, but opined her condition was "non-severe." (R. 151)

On March 29, 2005, Dr. Durward wrote a brief opinion letter in which he opined Franks was "disabled by a large left-sided arteriovenous malformation," producing "symptoms which have made her unable to work." (R. 152) On February 16, 2006, Dr. Durward wrote another brief opinion letter in which he noted Franks's condition is "associated with symptoms of visual loss and loss of sensation on one side of her body," occurring frequently but with irregularity, and precluding her from working. He "concur[red] with Dr. Martin that she is debilitated by these symptoms of her arteriovenous malformation." (R. 154)

On March 20, 2007, Michael A. Jennings, M.D. examined Franks, reviewed her past medical records, and opined that "she is completely disabled secondary to her AVM," which is a severe condition. (R. 155)

### 3. *Vocational expert's testimony*

The ALJ asked VE Gail Leonhardt to consider an individual age 55 with a high school education who can lift or carry ten pounds frequently and twenty pounds occasionally; walk, sit, or stand for six hours in an eight-hour day; must avoid concentrated exposure to dust, fumes, cold, and heat; and avoid hazards, dangerous equipment, machinery, and ladders. The VE stated the hypothetical individual could perform light and sedentary work, which would include all of Franks's past relevant work. (R. 208) In addition, even if the individual needed unskilled work, she could still return to Franks's past job as a sales attendant. (R. 209)

If Franks's testimony were deemed credible, then the VE indicated she would be unable to work. The VE noted Franks has cited symptoms including memory problems; frequent, debilitating headaches, brought on by any type of stress; and pain levels and extended recovery times associated with her headaches. (R. 209-10) The VE stated Franks "would not be able to function at all" when she has a severe headache. (R. 210)

9

## *4. The ALJ's decision*

The ALJ found Franks had not engaged in substantial gainful activity "from her alleged onset date of April 1, 2001 through her date last insured of September 30, 2006." (R. 16) He found Franks has "severe impairments" consisting of "left cerebral arteriovenous malformation and hypertension," but her impairments, singly or in combination, do not meet the listing level of severity. (R. 16-17) He found her osteoporosis and visual acuity problems in her left eye do not impose any limitations on her basic work-related functioning and, therefore, are not severe. (R. 16-17)

The ALJ assessed Franks's residual functional capacity as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of light work, i.e., she could lift and carry 2- pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; and stand/walk 6 hours in an 8-hour workday. She must avoid concentrated exposure to fumes, dust, and gases and she is precluded from working around dangerous machinery or climbing ladders.

(R. 17) In arriving at this assessment, the ALJ found Franks's subjective complaints not to be fully credible. The ALJ found it significant that Franks did not seek any type of medical treatment at all from 1996 until April 2000. From then until June 2004, she was seen several times for sinus problems, but she never complained to any doctor about the debilitating headaches she described in her hearing testimony. He found the opinions of Franks's treating sources to be based primarily on Franks's subjective complaints. He further found it 'puzzling' that Franks had failed to mention her headaches to her family doctor until only two weeks prior to her ALJ hearing, when the doctor advised Franks to see a neurosurgeon. The ALJ found these facts reduced Franks's credibility. (R. 19-21)

The ALJ further found Frank's "daily activities to not reflect an individual who is so incapacitated she cannot function at all." (R. 21) Franks watches her grandchild, performs light household chores, plays cards, watches television, and plays board games.

10

She has taken some trips to visit family. Most significantly, the ALJ found Franks's failure to pursue further testing or obtain updated medical opinions regarding her condition undermined both Franks's and her husband's testimony. (R. 21-22)

The ALJ gave little weight to Dr. Durward's opinion, noting the doctor had not examined Franks since 1993. He gave little weight to Dr. Jennings's opinion because Franks only saw the doctor two weeks prior to the ALJ hearing. In addition, he noted both of those doctors' opinions that Franks is disabled deal with the issue ultimately reserved to the Commissioner. The ALJ gave Dr. Martin's opinion some weight, but did not credit his opinion that Franks is debilitated during her headache episodes, noting that opinion was based on Franks's subjective report. He overruled the state agency consultant's conclusion that Franks's impairments are not severe, but he concluded that her condition is stable and she remains able to work. (R. 22-23) In so finding, the ALJ noted Franks had "experienced no recorded episodes of debilitating headaches." (R. 23)

The ALJ found Franks can return to all of her past relevant work, and she therefore was not disabled through her date last insured. (*Id.*)

### III. DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

#### A. Disability Determinations and the Burden of Proof

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . .

in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, *supra*, 2007 WL 2593631 at *2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L. Ed. 2d 119 (1987)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

12

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*, 2007 WL 2593631.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley*, 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain

non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

## B. *The Substantial Evidence Standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline*, *supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health &*

*Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

    On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S. Ct. 1050, 98 L. Ed. 2d. 1012 (1988); *Hardaway v. Secretary of H.H.S.,* 823

F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1) the claimant's daily activities;
> 2) the duration, frequency and intensity of the pain;
> 3) precipitating and aggravating factors;
> 4) dosage, effectiveness and side effects of medication;
> 5) functional restrictions.

*Polaski*, 739 F.2d 1320, 1322 (8th Cir. 1984). *Accord Ramirez v. Barnhart*, 292 F.3d 576, 580-81 (8th Cir. 2002). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

## IV. DISCUSSION

Franks argues the ALJ erred in finding her subjective complaints not to be fully credible. She argues the ALJ's credibility analysis is flawed because the ALJ faulted her for not seeking treatment when none was available, not complaining to her family doctor about something he could neither help nor treat, and not taking medications when no

17

medications existed to help her condition.  Franks also points out that no doctor has ever doubted her veracity or found her symptoms to be inconsistent with her medical condition.

The Commissioner argues the ALJ found Franks's allegations not to be credible "for legally sufficient reasons," and therefore the ALJ's judgment must be upheld. Alternatively, if the court does not uphold the ALJ's decision, then the Commissioner argues this matter should be remanded for further proceedings because the records fails to overwhelmingly support an immediate finding of disability.  Doc. No. 11, p. 13 (citing *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000)).

An ALJ's credibility determination must be supported by substantial evidence in the record and must be explained fully.  *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006); *Jeffery v. Sec'y of H.H.S.*, 849 F.2d 1129, 1132 (8th Cir. 1988).  Although an ALJ may consider the absence of supporting medical evidence, the lack of medical evidence alone will not support the rejection of the claimant's subjective complaints.  *Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994); *Jeffery*, 849 F.2d at 1132.  Here, the Commissioner's arguments fail to support his conclusion that Franks is not disabled.

The Commissioner argues the ALJ properly considered Franks's activities during the relevant period.  He notes that "*[u]nless she has a headache*, [Franks] reported a fairly routine daily regiment [sic], including the ability to perform light household chores and babysit her grandchildren. . . . [She] plays cards, watches television, reads, and plays board games." (Doc. No. 11, p. 12; emphasis added)  The Commissioner recognizes that Franks's daily regimen is dependent on whether or not she has a headache.

Furthermore, the routine daily regimen described by the Commissioner falls far short of demonstrating that Franks would be able to perform "'the requisite physical acts day in and day out, in the sometime competitive and stressful conditions in which real people work in the real world.'"  *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)).  *See Cline v.*

18

*Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991) ("[A]n SSI claimant need not prove that she is bedridden or completely helpless to be found disabled and the fact that claimant cooks and cleans for herself, shops for groceries, does laundry, visits friends, attends church, and goes fishing does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity.") (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

Franks's unrebutted testimony demonstrates that she was unable to sustain even part-time employment due to her condition. Her subjective complaints are supported by objective medical evidence, to the extent that evidence indicates Franks has a severe, debilitating condition that is not amenable to any type of known medical treatment. As the Commissioner notes in his brief, "Subjective complaints are recognized as disabling when they are not remediable and preclude the claimant from engaging in any form of substantial gainful activity." (Doc. No. 11, p. 9, citing *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989)) Franks's subjective complaints are not remediable, and during a headache episode, the evidence shows her symptoms completely preclude her from engaging in almost all activities, let alone full-time, gainful employment. The VE acknowledged that if Franks's testimony were deemed credible, she would be unable to work. (*See* R. 209-10)

The court recognizes the ALJ's concern over the fact that Franks did not seek further medical opinions for a lengthy period of time. However, in the present case, her failure to do so is understandable: she was told there was no medical treatment for her condition. Her doctors have continued to espouse the identical opinion regarding the lack of treatment for Franks's condition even twelve years after her diagnosis

The undersigned disagrees with the Commissioner's argument that should the ALJ's decision be overturned, this matter should be remanded for further proceedings. In this case, the record overwhelmingly supports an immediate finding of disability. *See Buckner*

19

*v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). There is nothing to be gained by further proceedings when a qualified VE has already testified that giving Franks's subjective complaints adequate weight, she is unable to perform any type of work.

## V. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed and this case be remanded for an immediate finding of disability, and for calculation and award of benefits.

**IT IS SO ORDERED.**

**DATED** this 15th day of December, 2008.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[1] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.