**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JUDITH A. FRANKS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C 08-4023-MWB

**ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*III.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *A.  Franks's Failure to Seek Additional Treatment* . . . . . . . . . . . . . . . . . . 8
     *B.  Franks's Daily Activities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     *C.  Franks's Reports of Headaches* . . . . . . . . . . . . . . . . . . . . . . . . . 11
     *D.  Franks's Prior Work History* . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*IV.  VOCATIONAL EXPERT'S TESTIMONY* . . . . . . . . . . . . . . . . . . . . . . 14

*V.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

On July 16, 2004, plaintiff Judith Franks filed an application for Title II disability insurance benefits.[1] In her application, Franks alleges a disability onset date of April 1, 2001. The causes of her disability, according to Franks, are vascular lesions[2] and high blood pressure. Franks alleges that these conditions cause her to have a poor memory, make her unable to handle stress, give her debilitating headaches, and make her right side numb. Franks's application for benefits was denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing, as requested, on April 4, 2007. The ALJ issued a decision on July 26, 2007, which denied Franks's request for benefits. On January 19, 2008, the Appeals Council denied Franks's request for review, making the ALJ's denial of benefits a final decision of the Commissioner of Social Security ("Commissioner").

On March 20, 2008, Franks filed a complaint in this court seeking review of the Commissioner's decision. Doc. No. 4. The undersigned referred the case to Chief United States Magistrate Judge Paul A. Zoss for a report and recommendation. On December 15, 2008, Judge Zoss issued a report and recommendation, which recommends that the undersigned reverse the Commissioner's decision, find Franks is disabled, and remand the case for calculation and award of benefits. Neither Franks nor the Commissioner filed objections to Judge Zoss's report and recommendation.

---

[1] Title II of the Social Security Act provides insurance benefits to individuals who establish that they suffer from a physical or mental disability. *See* 42 U.S.C. § 423.

[2] "A CT scan [Computerized Axial Tomography scan] revealed 'a huge enhancing lesion' in Franks's brain." Doc. No. 14 (quoting R. at 120). "Angiograms identified the lesion as 'a huge arteriovenous malformation ("AVM") which has feeding vessels from posterior cerebral, middle cerebral and both anterior cerebral vessels." *Id.* (quoting R. at 118).

## II. LEGAL STANDARDS

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2008); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any

3

more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, the court reviews the magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In applying this standard to review Judge Zoss's report and recommendation, the court must also be mindful of the standards upon which an appealed Commissioner's decision is reviewed. If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Page*, 484 F.3d at 1042

4

(quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). Therefore, the court will consider whether Judge Zoss's determinations are clearly erroneous, while keeping in mind that the ALJ must have substantial evidence in support of his factual findings.

## III. LEGAL ANALYSIS

In his report and recommendation (Doc. No. 14), Judge Zoss found that there was not substantial evidence for the Commissioner's finding that Franks was not disabled—instead, Judge Zoss found overwhelming evidence that Franks was disabled and recommended remanding the case for an immediate calculation and award of benefits. This court has the ability "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (sentence four). The Eighth Circuit Court of Appeals has articulated the requirements for remand pursuant to sentence four of section 405(g) as follows:

> Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of "our abundant deference to the ALJ," remand the case for further administrative proceedings. *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir.1998). Consistent with this rule, we may enter an immediate finding of disability only if the record "*overwhelmingly* supports" such a finding. *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir.1992)*; see Fowler v. Bowen*, 866 F.2d 249, 253 (8th Cir.1989); *Talbott v. Bowen*, 821 F.2d 511, 514 (8th Cir.1987).

*Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000)(emphasis added).

In this case, there is overwhelming evidence of disability only if Franks's subjective complaints are believed. The Eighth Circuit Court of Appeals has explained that an "adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)). In *Polaski*, the court more specifically explained:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them…. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.

*Polaski*, 739 F.2d at 1322. In relation to this framework, the Eighth Circuit Court of Appeals has found that "[t]he ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (2004)(quoting *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)). "The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." *Cox v. Apfel*, 160 F.3d at 1207.

The Commissioner states that "[t]he ALJ found that the objective medical evidence could have been reasonably expected to produce the alleged symptoms,[3] but that the statements of [Franks] and her husband concerning the intensity, persistence and limiting effects of the symptoms, during the relevant period were not entirely credible." R. at 19; Doc. No. 11. In particular, the Commissioner provides the following reasons, in his brief (Doc. No. 11), for rejecting Franks's subjective complaints: 1) "[Franks] did not seek any treatment for her AVM symptoms and there was no treating physician during the relevant period;" 2) Franks "had been told in 1993 that there was no treatment available" for her AVM and did not "inquire about possible new developments in the following 13 years;" 3) Franks claimed that her symptoms became worse but did not "seek testing to make sure that she had not developed a hemorrhage or aneurysm;" 4) When Franks "sought treatment for sinusitis and related symptoms during the relevant period, she did not report debilitating headaches and she declined further referral to an ENT specialist;" 5) Franks did not "report headaches to Dr. Jennings until two weeks before the hearing;" 6) Franks "reports that her condition has been present since birth…" but "it has not precluded [her] performance of substantial gainful activity over an extended period of time…" and "there is no objective evidence of any deterioration in [her] condition during the relevant period;" 7) Franks did not follow up with a neurosurgeon, as recommended by her physician; 8) "Unless [Franks] has a headache, she reported a fairly routine daily regiment," including

---

[3] However, the Commissioner also points out that "[t]he ALJ found that the objective medical evidence failed to substantiate [Franks's] alleged severity of pain and frequency of debilitating headaches." R. at 21; Doc. No. 11. Under *Polaski*, the finding that the objective medical evidence fails to substantiate Franks's subjective complaints is clearly not a reason, by itself, to disregard the complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). ("The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them….")

performing household chores, babysitting her grandchildren, playing cards, watching television, reading, playing board games, and visiting her daughter in Pennsylvania for three and one-half months; 9) Despite her life-long condition, [Franks] graduated from high school, finished one year of business school, married and went through at least two pregnancies and childbirths, raised her children, and performed substantial gainful activity over an extended period of time. These reasons generally fall into four categories: first, that Franks has repeatedly failed to seek additional treatment for her condition; second, that Franks engages in activities that are inconsistent with her alleged symptoms; third, that Franks has inconsistently reported her most severe symptom, her debilitating headaches; and fourth, that Franks does not have adequate evidence that her condition has sufficiently deteriorated since she was last employed. The court will evaluate each of these categories, in relation to the evidence as a whole, to determine whether Franks's subjective complaints were properly discounted. *See Polaski*, 739 F.2d at 1322.

### A. *Franks's Failure to Seek Additional Treatment*

The Commissioner repeatedly questions Franks's decision not to seek additional treatment for symptoms during the relevant period, to take advantage of referrals to see if her condition has worsened, or to attempt to discover new treatment options. The Commissioner cites *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) as authority for the proposition that Franks's "failure to seek medical assistance for her alleged… impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefit." Doc. No. 11. In *Gwathney*, the court evaluated a claimant's alleged severe impairments of obesity, hypertension, arthritis, gastritis, dermatitis, depression, and mental retardation. *Gwathney*, 104 F.3d at 1045. The court found " no evidence that Gwathney had ever sought treatment for her *mental health*

concerns, which included being prone to various behavioral tics and having dependent personality disorder." *Id.* (emphasis added).

In contrast to *Gwathney*, Franks sought treatment for her condition. In fact, the ALJ's opinion details the results of Franks's treatment:

> [T]he claimant was diagnosed by G. Barrie Purves, MD, with a large… (AVM) of the left cerebrum, confirmed by CT scan and MRI [Magnetic Resonance Imaging] in 1993, after she complained of headaches, blurred vision, and right arm and hand numbness. Subsequent consultations with neurologists and neurosurgeons ensued, and review of a report from Quentin Durward, MD, dated May 17, 1993, shows his opinion that, because of the size of the AVM, no invasive procedures (i.e., surgical or radiological) were advisable because of potential right hemiparesis and probable dysphagia. (Exhibit 1F/5-6)

R. at 19. Franks, after learning that she had an inoperable condition, could have scheduled regular medical appointments to determine whether her condition had worsened or to investigate the possibility that there were new procedures that might help her condition. However, she had already obtained medical treatment and had not been given any ongoing treatment regime—the doctors told her "there is really no other[4] treatment available." R. at 115. Faulting Franks for failing to seek additional treatment would be, in essence, faulting a claimant for having an inoperable or un-treatable condition. In addition, Franks's decision to obtain treatment, take advantage of referrals, or to attempt to discover new treatment options would be motivated by both pain mitigation and life

---

[4] The doctors had previously ruled out surgical intervention: "I think that I would certainly be reticent to consider surgical intervention anywhere in the world on this lesion as I think the likelihood of her having a significant deficit postoperatively is very high." R. at 115; *see* R. at 117-118.

9

preservation—Franks's failure to seek treatment based on the life preservation motivation is evidence that she sincerely believed that there was no treatment for her condition and not necessarily evidence of a lack of pain or incapacity. Therefore, the court finds that the portion of the record concerning Franks's failure to seek further treatment, to take advantage of referrals, and to attempt to discover new treatment options is not inconsistent with Franks's subjective complaints of her condition.

### B. *Franks's Daily Activities*

The Commissioner describes many of Franks's past and current activities as inconsistent with her alleged symptoms. The Commissioner may consider the "claimant's daily activities" when determining her credibility. *Polaski*, 739 F.2d at 1322. However, the court does not find any activities alleged in the record that would be inconsistent with Franks's alleged symptoms.

The Vocational Expert ("VE") found that, if Franks's testimony is considered credible, Franks would not be able to do her past work or any other type of work because:

> She discussed memory problems. She discussed the debilitating headaches two to three times a week and the severe ones several times a month and she indicated that any kind--type of stressing to instigate her headaches. She described her pain levels for these headaches, the least severe ones at six to seven, the severe ones at a 10. And then in terms of duration, it was indicated that they lasted a tremendous period of time. I don't see here--see my note on that from the time it was--it was a long time. It was like a day.

R. at 209-210. The VE later targets the periods when she has severe headaches, the "frequency of the periods," as the reason why she would be unable to work. R. at 210. In other words, Franks's debilitating headaches, if found to exist as she describes them,

are disabling because of the duration and frequency of the periods during which she would be unable to work. *See* R. at 209-210. Although these periods make her ineligible to obtain employment, they do not restrict her ability to engage in the activities alleged in the record,[5] with the possible exception of caring for a young child—if the record demonstrated that Franks could engage in these activities during her debilitating headaches then the court would reach a different conclusion. While the headaches might impact her provision of childcare, she has adequately explained the measures she takes when she experiences a headache while providing childcare.[6] Therefore, the court finds that the portion of the record concerning Franks's daily activities is not inconsistent with Franks's subjective complaints of her condition.

## C. *Franks's Reports of Headaches*

Several of the Commissioner's above listed reasons to doubt Franks's credibility concern the general allegation that Franks reported her headaches in an inconsistent manner. The court, therefore, examines whether there is evidence that Franks's subjective complaints, related to her headaches, are inconsistent with each other and the record as a whole. *See Finch*, 547 F.3d at 935. The Commissioner emphasizes, for example, Franks's "failure to report headaches to Dr. Jennings until two weeks before the hearing reduced her credibility." Doc. No. 11.

---

[5] The court finds that periodic debilitating headaches would not prevent Franks from taking part in activities, such as, performing household chores, playing cards, watching television, reading, playing board games, and visiting another state.

[6] Franks's husband is able to provide childcare when Franks experiences headache symptoms.

The court did not find it difficult to unearth evidence in the record of Franks's headaches from as early as 1993. On July 8, 1993, Dr. Purves writes:

> This 48-year-old lady has had migraine-like headaches with a prodrome of teichopsia for approximately 2 years. These have been uniform in that they are always on the left side of her head and the teichopsia is on the right side.

R. at 116. Similarly, on May 17, 1993, Dr. Durward writes:

> [Franks] presents with a long-standing history of left-sided hemicranial headaches. These are often preceded by visual scintillations to the right and hemiparesthesias, and occasionally transient paresis…. I think that it would be fair to say that there are several different ways of attempting to treat this but I think at her age it is not unreasonable to consider some type of treatment given the fact that gradually her headache syndrome is worsening.

R. at 117. A couple of years later, on January 17, 1995, Dr. Purves writes:

> About a week ago [Franks] started having some increased numbness and tingling in her right hand and in her right foot. She describes an unusual sensation of being aware of where her foot and arm were although she could actually feel, touch and identify things in her hands. She has also been having some bifrontal headaches with some burning in her vision.

R. at 114. On Franks's Disability Report, dated June 22, 2004, she explains that the headaches "[a]ffect[] my memory; my right side (especially right arm) has little feeling when I have headaches. I am getting more headaches all the time. I had been advised by Dr. Purves to avoid stress and not lift over 20 pounds." R. at 66. Franks reported the following on her Personal Pain/Fatigue Questionnaire, dated September 8, 2004:

> The pain is on the left side of my brain-sharp throbbing pain-later moves to my eyes [and] head…. When I have this I need to lay down in a dark room and not move at all. The following day I do not function well-I am extremely weak

12

> [and] tired…. There is no pattern as to when or how often.
> When it starts it is debilitating… [The pain/fatigue lasts] 24-48
> hours sometimes into another day.

R. at 107. On Franks's Disability Report Appeal, completed on October 20, 2004, she states:

> Again[,] in the first initial report that I filled out, you failed to include the major reason for applying for this needed disability[.] The report from Dr. Purvis-neurosurgeon was left out of the report. Please get these medical records and they will substantiate the reason for my disability.

R. at 105(emphasis omitted). Clearly, Franks has alleged that she has severe headaches for many years. Franks's failure to mention her headache complaints each time she visited a medical professional, especially when the headaches were not the reason for her visit with the medical professional, is not inconsistent with her subjective complaints and the rest of the record as a whole.

### D. *Franks's Prior Work History*

Despite the court's recognition of Franks's persistent, and consistent, reports of headaches, the Commissioner argues that there has been insufficient evidence of "significant deterioration" in Franks's symptoms since she was last employed. *See* Doc. No. 11. The Commissioner may consider the "claimant's prior work record" when determining her credibility. *Polaski*, 739 F.2d at 1322.

The court first notes that Franks's employment after July 8, 1993, was considered by Dr. Purves as "a try."[7] R. at 115. Although Dr. Purves did not have "major

---

[7] Dr. Purves stated that she could trying working, "as it is only a 4 hour per day, 4 days per week job, and see how she copes." R. at 15.

objections" to Franks's return to work, he explained that "she should have meticulous care to her blood pressure to ensure that this is not running high." *Id.* However, Franks eventually found that she was unable to work with her symptoms, in the long run, and quit for reasons that were related to her condition, *i.e.* headaches, stress and poor memory. *See* R. at 183, 193-194. Franks's credibility, in this regard, is somewhat bolstered by the July 8, 1993, Dr. Purves's letter, as he explains Franks as being "adamant" about trying to go back to work. *Id.* The court additionally recognizes that Franks's condition is, unfortunately, deteriorative in nature. *See* R. at 117. The court finds that the portion of the record concerning Franks's prior work history is not inconsistent with Franks's subjective complaints of her condition. The court, having evaluated the record as a whole and, more specifically, the Commissioner's reasons for finding Franks's subjective complaints not credible, finds that the Commissioner improperly disregarded Franks's subjective complaints. *See Polaski*, 739 F.2d at 1322.

## IV. VOCATIONAL EXPERT'S TESTIMONY

A VE was present at Franks's April 4, 2007, hearing before the ALJ. As is customary, the ALJ questioned the VE by providing him with hypothetical questions relating to Franks's perceived limitations. First, the VE stated that Franks would be able to perform light work, including her past work, assuming the following:

> she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds; walk, sit, stand six hours in an eight-hour day; should avoid concentrated exposure to dust, fumes, cold and hot temperature and avoid hazards, dangerous equipment, machinery or ladders.

R. at 209. The VE also found that there is suitable light work in Franks's region and in the nation. However, and as mentioned above, the VE was next asked to consider whether

Franks could do her past work or any other type of work, assuming her testimony is considered credible. The VE stated that Franks would not be able to obtain employment, considering her problems with debilitating headaches as well as her problems with memory and stress. *See* R. at 210.

Above, the court found that the Commissioner improperly discredited Franks's subjective complaints. This finding, along with the VE's opinion that Franks's condition, as she explains it, would preclude her from obtaining employment, prevents this court from finding substantial evidence on the record as a whole to support the Commissioner's determination that Franks is not disabled (*see Page*, 484 F.3d 1042), and provides overwhelming evidence that Franks was disabled as of April 1, 2001. *See Buckner*, 213 F.3d at 1011.

## V. CONCLUSION

The court finds that there is not substantial evidence on the record as a whole to support the Commissioner's decision that Franks is not disabled and finds overwhelming evidence that Franks was disabled as of April 1, 2001. Therefore, Judge Zoss's findings in his report and recommendation are correct and not clearly erroneous. The court **accepts** Judge Zoss's report and recommendation (Doc. No. 14) and **reverses** the Commissioner's decision that Franks was not disabled. The court **remands** the case for an immediate finding of disability, and for calculation and award of benefits, consistent with this opinion.

**IT IS SO ORDERED.**

**DATED** this 29th day of January, 2009.

                                        _____
                                        MARK W. BENNETT
                                        U. S. DISTRICT COURT JUDGE
                                        NORTHERN DISTRICT OF IOWA